1  **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8  Ralph Schaefer,                    )
                                       )
9          Plaintiff,                  )        No. CV-05-1228-PHX-DGC
                                       )
10 vs.                                 )
                                       )
11 James Irby Keele and Jane Doe Keele, )        **ORDER**
   husband and wife,                   )
12                                     )
           Defendants.                 )
13 _____)

14

15       A bench trial was held on August 21, 2007.  On the basis of the testimony and exhibits

16 admitted during the trial, including the credibility of witnesses, the Court makes the

17 following findings of fact and conclusions of law.

18 **A.    Findings of Fact.**

19       1.       Defendant James Keele owned leases from the Arizona State Land Department

20 for land known as the Butler Valley Farm located near Bouse, Arizona.

21       2.       Defendant subleased a portion of the Butler Valley Farm to William Reuter.

22 Although Reuter subleased only a portion of the farm, he operated the entire farm.  The farm

23 was used for the production of alfalfa hay.

24       3.       In early 2003, Reuter placed an advertisement in the Capitol Press newspaper

25 advertising a farm for lease near Bouse, Arizona.

26       4.       Plaintiff Ralph Schaefer responded to the advertisement, expressed an interest

27 in leasing the farm, and began discussions with Reuter.  Plaintiff engaged in several

28 telephone conversations with Reuter and he and members of his family visited the farm.  On

Dockets.Justia.com

the basis of his conversations with Reuter and his visit to the farm, Plaintiff performed financial calculations concerning the farm's potential profitability and decided that the farm would be a good business venture for him and his family.

5.     During the course of the discussions with Plaintiff, Reuter said he had a financial partner in the farm. Reuter stated that Defendant was a part owner of the farm, that Defendant and Reuter had worked together in developing the water and infrastructure for the farm, and that Defendant handled the financial side of their business.

6.     On June 17, 2003, Plaintiff and Reuter signed a Commercial Lease. Ex. 1. The lease applied to the Butler Valley Farm, included a term in excess of five years, and provided that Plaintiff would pay an annual rent of $105 per acre in equal monthly installments. *Id.*

7.     Following execution of the lease, Plaintiff moved some members of his family to the Butler Valley Farm and began operations.

8.     Shortly after the family arrived at the farm, Reuter introduced Defendant to Randolph Schaefer, Plaintiff's son, as "my partner."

9.     On other occasions, such as in a conversation with farmhand George Feitz, Defendant stated that he and Reuter had been partners in the farm for several years.

10.     The Schaefer family began operating the farm on June 26, 2003. Defendant visited the operations often. He would speak with members of the family including Randolph Schaefer, Tim Schaefer, and Jerry Moolick, Plaintiff's son-in-law. Defendant stated that he was happy to see the family operating the farm and he liked what they were doing. Defendant generally would drive around the farm during his visits. Plaintiff, who lives in Washington, was not present during Defendant's visits to the farm in July and August of 2003.

11.     In mid-August of 2003, Plaintiff decided to pay a visit to Defendant. Plaintiff and his son, Randolph, visited Defendant at his home in Lake Havasu City, Arizona. It was a pleasant meeting. Defendant was aware of the sublease between Plaintiff and Reuter and asked to see a copy. Plaintiff did not have a copy with him. Defendant stated that he viewed Reuter as a son and had no problem with the Schaefer family operating the farm. Defendant

did not express concern about the lease. Defendant said his word was as good as his bond. On the basis of the conversation, Plaintiff was satisfied that Defendant fully approved of the lease and Plaintiff's operations.

12.    On October 17, 2003, without advance notice, an officer from the LaPaz County Sheriff's Office evicted Plaintiff's family from the farm. The officer did so at the request of Defendant, but without the involvement of any court.

13.    At the time of the eviction, there were 1,584 tons of hay on the Butler Valley Farm that belonged to Plaintiff. Plaintiff and his family were not permitted to remove the hay and were not paid for it. Defendant took possession of the farm and the hay.

14.    The reasonable price of the hay at the time of Plaintiff's eviction was $65 per ton.

15.    Defendant and Reuter sold the hay and kept the proceeds.

**B.    Conclusions of Law.**

1.    The representations of Reuter and Defendant concerning the existence of a partnership, including the representations made to Plaintiff and members of his family, give rise to a partnership by estoppel. A.R.S. § 29-216(a)(1). Because of this partnership by estoppel, Defendant is bound by the representations and actions of Reuter. *Id*.

2.    The representations of Defendant and Reuter concerning the existence of a partnership, as well as Defendants' statements about his relationship with Reuter and his actions with respect to Reuter's lease of the farm to Plaintiff, also give rise to an agency relationship between Defendant and Reuter. A.R.S. § 29-216(B). Because of this relationship, Defendant is bound by the representations and actions of Reuter. *Id*.

3.    Because of the partnership by estoppel and agency relationship that arose from the representations and actions of Defendant and Reuter, Defendant is bound by the Commercial Lease signed by Reuter on June 17, 2003. A.R.S. §29-216.

4.    Defendant also ratified the lease during his meeting with Plaintiff and Randolph in August of 2003. Pursuant to this ratification, Plaintiff is bound by the lease.

5.    Defendant never asserted that Plaintiff or his family were in default of the lease

and never provided notice of default as required by the lease. As a result, Defendant's eviction without notice of Plaintiff and his family from the Butler Valley Farm on October 17, 2003, breached the lease.

6. Plaintiff is entitled to recover damages for breach of the lease in the amount of $102,960. These damages constitute the value of 1,584 tons of hay at $65 per ton.

7. Plaintiff is not entitled to recover lost future profits from the operation of the farm during the anticipated course of the Commercial Lease. To recover lost profits for a new business venture, a plaintiff must provide "a reasonably certain factual basis for computation of lost profits." *Rancho Pescado, Inc. v. Northwestern Mut. Life Ins. Co.*, 680 P.2d 1235, 1245 (Ariz. Ct. App. 1984). Although Plaintiff performed some computations concerning possible profits before undertaking the farming operation, Plaintiff did not present those computations during trial and provided no evidence that the profits would have been earned had Plaintiff and his family remained on the farm. No records of earnings or expenses during Plaintiff's brief four-month tenancy were presented, nor was other evidence presented to show that Plaintiff's profit projections were reasonable or based on accurate assumptions about farming operations in western Arizona. Moreover, several witnesses testified that the profitability of the Butler Valley Farm had been problematic for some time. Because the Court views Plaintiff's lost profit estimates as speculative, such profits are not recoverable in this case. *Id.* at 1244-46; *see also Felder v. Physiotherapy Assoc.*, 158 P.3d 877, 887 (Ariz. App. 2007)..

8. Count 2 of Plaintiff's complaint asserts a claim for common law fraud. In order to recover on such a claim, Plaintiff must prove that Defendant made a false statement, knowing at the time that it was false. *Echols v. Beauty Built Homes*, 647 P.2d 629, 631 (Ariz. 1982). Although Plaintiff asserted during trial that Defendant made representations about his approval of Plaintiff's lease with Reuter and the fact that he was happy to have the Schaefer family operating the farm, the evidence does not permit the Court to conclude that Defendant knew these statements were false when made. An equally plausible explanation would suggest that Defendant decided to evict Plaintiff when payments for the state land

- 4 -

lease were due and a substantial amount of hay was present on the farm.

9. Count 3 of Plaintiff's complaint asserts a claim for consumer fraud under A.R.S. § 44-1521 in connection with the placement of the ad in the Capitol Press. Plaintiff did not prove, however, that Defendant knew of or sanctioned the advertisement.

10. Count 4 of Plaintiff's complaint asserts a claim for abuse of process. "Although 'process' for purposes of an abuse-of-process claim is not confined to the strict legal definition of the word, it is still an act done under authority of the court for purposes of perpetrating an injustice, i.e., a perversion of the judicial process to the accomplishment of an improper purpose. The authority of the court must have been invoked for a defendant to be liable for an abuse of process.'" *Crackell v. Allstate*, 92 P.3d 882, 900 (Ariz. App. 2004) (citations and quotation marks omitted). In this case, Defendant did not invoke the authority of any court. Plaintiff presented no evidence that Defendant commenced a court proceeding, filed court papers, or otherwise involved any court in Plaintiff's eviction from the farm. Defendant therefore cannot be liable for abuse of process.

11. Plaintiff's counsel asserted a claim for unjust enrichment at trial, but such a claim is not contained in Plaintiff's complaint. Dkt. #1. Moreover, "where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." *Brooks v. The Valley National Bank*, 548 P.2d 1166, 1171 (Ariz. 1976).

12. Plaintiff asserts a claim for punitive damages. The Court concludes, however, that Plaintiff has not established the requisite evil mind by clear and convincing evidence. *See Linthicum v. Nationwide Life Ins. Co.*, 723 P.2d 675, 681 (Ariz. 1986).

**IT IS ORDERED:**

1. Judgment shall be entered in favor of Plaintiff Ralph Schaefer in the amount of $102,960.

2. Plaintiff's claims for fraud, consumer fraud, and abuse of process are **dismissed**.

3. If Plaintiff seeks to recover attorneys' fees, Plaintiff shall file an application for such fees and all supporting memoranda (notwithstanding the schedule

1       contained in the Court's local rules) on or before **September 21, 2007**.

2       Defendants shall file a full response on or before **October 5, 2007**.  Plaintiff

3       shall file a reply on or before **October 12, 2007**.

4       4.      The Court will enter judgment in a separate document.

5       DATED this 23rd day of August, 2007.

_____

David G. Campbell
United States District Judge